**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Troy A. Hatfield,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>　　　　　Defendant. | Civ. No.: 07-3417 (MJD/JJK)<br><br><br><br><br>**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Edward C. Olson, Esq., Attorney at Law, counsel for Plaintiff.

Lonnie F. Bryan, Esq., Assistant United States Attorney, counsel for Defendant.

## INTRODUCTION

Plaintiff Troy A. Hatfield appeals the unfavorable decision of Defendant Michael J. Astrue, the Commissioner of the Social Security Administration ("the Commissioner"), denying his applications for a period of disability, disability insurance benefits, and supplemental security income. This matter is before this Court for a report and recommendation to the District Court on the parties' cross-motions for summary judgment. *See* 28 U.S.C. § 636(b)(1) and Local Rule 72.1. For the reasons stated below, this Court recommends that Plaintiff's Motion for Summary Judgment (Doc. No. 15) be denied and the Commissioner's Motion for Summary Judgment (Doc. No. 23) be granted.

**BACKGROUND**

**I.     Procedural History**

In 2003, Plaintiff filed applications for disability insurance benefits and supplemental security income. (Doc. No. 7, Transcript ("Tr.") 71-73; 622-27.) Plaintiff alleged that he became disabled on July 1, 2000. (Tr. 71; 622.) The state agency denied Plaintiff's applications both initially and upon reconsideration. (Tr. 28-36; 45-47; 628-32.) Plaintiff then requested a hearing, which occurred on May 12, 2006, in Mankato, Minnesota, before an Administrative Law Judge ("ALJ"). (Tr. 17; 641-87.)

The ALJ issued a Decision on November 17, 2006, denying Plaintiff's applications for benefits. (Tr. 24-25.) Plaintiff filed a Request for Review. (Tr. 13.) On May 30, 2007, the Appeals Council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 9-12.) *See* 20 C.F.R. §§ 404.981, 416.1481. On July 20, 2007, Plaintiff filed the instant action with this Court. The parties thereafter filed cross-motions for summary judgment.

**II.    Factual Background and Medical History**

Plaintiff was born on August 15, 1963, and at the time of the ALJ's decision, was 43 years old. (Tr. 71.) He has an eleventh-grade education. (Tr. 181; 192.) Plaintiff previously worked as a line appliance assembler, an

automobile wrecker, a salvage assistant manager, and an egg packer.[1]  (Tr. 104-08; 174-75; 183-84; 192.)  The former two positions are relevant here.

In June 1999, Plaintiff was injured at work when a falling wheel and truck tire weighing 185 pounds hit Plaintiff on the head.  (Tr. 202.)  Plaintiff asserts he was thereafter unable to work because of a degenerative disc, back injury, traumatic brain injury, nerves fused to bone, torn epidural sac, neck fusion, seven bulging discs, left leg numbness, and short-term memory problems.  (Tr. 173.)  The record reflects that in March 2002, Plaintiff had disc herniation and stenosis at the L3-4 and L4-5 levels, discovered post-operation.  (Tr. 305.)  In May 2002, Plaintiff also had an additional surgical procedure to repair a dura leak.  (Tr. 230.)  In July 2002, Plaintiff was diagnosed with a moderate disc bulge at the C6-7 level resulting in two epidural steroid injections.  (Tr. 303; 235-36.)  Disc bulges at the L4-5 level with nerve root contact were discovered in February 2004 as well.  (Tr. 298.)

In April 2004, a Functional Capacities Evaluation ("FCE") was performed on Plaintiff.  (Tr. 315-21.)  The evaluator recommended that Plaintiff perform light-level work, and stated that he could do so for eight hours a day, five days per week.  (Tr. 316.)  The evaluator also stated that Plaintiff's work should be restricted by limitations on waist to overhead lift and that he would have to alternate sitting, standing, and walking throughout the day.  (Tr. 316.)

---

[1] The ALJ noted that the egg packer job was not past relevant work because

Specifically, the evaluator explained that Plaintiff could lift twenty pounds from floor to waist for one to five percent of an eight-hour day, and fifteen pounds from floor to waist for six to thirty-three percent of an eight-hour day. (Tr. 317.) The evaluator explained that Plaintiff could sit for six to thirty-three percent of an eight-hour day, and stand for six to thirty-three percent of an eight-hour day. (Tr. 318.) In addition, the evaluator stated that Plaintiff was unable to sustain static sitting or standing for more than ten minutes due to back pain and that Plaintiff should limit sitting or standing to ten minutes before changing activity or position. (Tr. 318.) The evaluator also noted that Plaintiff could walk for thirty-four to sixty-six percent of an eight-hour day, but recommended that he limit the walking to a quarter mile or less with a ten- to fifteen-minute recovery time before repeating. (Tr. 318.)

## III.   Testimony at Administrative Hearing

**Medical Expert Testimony**

At the May 2006 administrative hearing, Dr. Andrew Steiner explained that Plaintiff had had treatment for low back pain, including two laminectomies. The pain was attributed to osteoarthritis and degenerative disc disease. (Tr. 675.) He also noted that Plaintiff had a C4-6 fusion procedure to treat his neck pain. (Tr. 676.) Dr. Steiner acknowledged Plaintiff's shoulder pain, headaches, mood disorder, major depressive disease, and history of traumatic brain injury and

---

it was outside of the 15-year time frame.

associated cognitive deficits.  (Tr. 676.)  Regarding the FCE, Dr. Steiner testified that its findings were supported by the record.  (Tr. 677.)  In addition to the recommendations therein, Dr. Steiner stated that he would limit Plaintiff on "overhead work" and "preclude anything more than occasional bending and twisting and stopping and kneeling and crawling and crouch[ing] and climbing."  (Tr. 677.)  Also, regarding changing positions, Dr. Steiner opined that a brief change of position, meaning a minute or two of changing position between sitting and standing "would not be unreasonable."  (Tr. 678.)   He also agreed with changing the positions "at will."  (Tr. 678.)

**Vocational Expert Testimony**

Jeffrey Hokeness testified at the administrative hearing as a vocational expert.  The ALJ posed a hypothetical question to Hokeness whereby he described someone of Plaintiff's age, education, and past relevant work experience.  The ALJ described the hypothetical person as one impaired by "a history of degenerative disc disease of the lumbar spine with past laminectomies, a history of past cervical fusion, history of headaches including migraine headaches, [and] a history of left shoulder pain secondary to a torn rotator cuff and osteoarthritis[.]"  (Tr. 682.)  In addition, the hypothetical person had "mental impairments which have been diagnosed as a mood disorder, depression, history of traumatic brain injury with cognitive disorder, and a pain disorder associated with psychological features and a general medical condition."  (Tr. 682.)  The ALJ

asked Hokeness to "assume that this individual is limited to light work exertionally lifting up to 20 pounds occasionally, 10 pounds frequently, there should be no overhead work, there should be no more than occasional bending, twisting, stooping, kneeling, crouching, crawling, or climbing[.]"  (Tr. 682.)  In addition, "the work should also accommodate the need for a brief change of position at will throughout the workday for a brief period of time."  (Tr. 683.)  Further, person was to be reduced to "routine, repetitive, unskilled work [] that should not involve more than brief and superficial contact with others."  (Tr. 683.)  The ALJ asked Hokeness whether this individual could perform any of the jobs done by Plaintiff in the past.  Hokeness opined that such a hypothetical person would not be able to perform Plaintiff's past work.  (Tr. 683.)  The ALJ then asked whether there would be "other jobs in the national economy that would fall within these limitations[.]"  (Tr. 683.)  Hokeness answered, "Yes.  I believe so[,]" and mentioned unskilled light jobs such as bench assembler,[2] cashier II,[3] and hand packager.[4]  (Tr. 683-85.)

---

[2]     Hokeness stated that there are 15,000 bench assembly jobs in Minnesota. (Tr. 683.)

[3]     Hokeness stated that there are 65,000 cashier II jobs in Minnesota. (Tr. 684.)

[4]     Hokeness stated that there are 8,000 hand packager jobs in Minnesota that are in the light category.  (Tr. 685.)

**V.     The ALJ's Findings and Decision**

On November 17, 2006, the ALJ issued a Decision denying Plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income. The ALJ followed the sequential five-step procedure as set out in the rules. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The Eighth Circuit has summarized these steps as follows: (1) whether the claimant is currently engaged in "substantial gainful activity"; (2) whether the claimant suffers from a severe impairment that "significantly limits the claimant's physical or mental ability to perform basic work activities"; (3) whether the claimant's impairment "meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education and work experience)"; (4) "whether the claimant has the residual functional capacity ["RFC"] to perform his or her past relevant work"; and (5) if the ALJ finds that the claimant is unable to perform the past relevant work then the burden is on the Commissioner "to prove that there are other jobs in the national economy that the claimant can perform." *Fines v. Apfel*, 149 F.3d 893, 894-95 (8th Cir. 1998).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since March 13, 2002, therefore meeting the requirement at the first step of the disability determination procedure. (Tr. 18, 24.) At steps two and three, the ALJ found that Plaintiff had severe impairments, but did not have an impairment or

combination of impairments that met the criteria in the regulations.  (Tr. 18, 24.)  At steps four and five, the ALJ found that Plaintiff did not retain the RFC to perform any of his past relevant work, but did retain the RFC to perform other work that exists in significant numbers in the national economy.  (Tr. 23-25.)

**DISCUSSION**

**I.      Standard of Review**

Review by this Court is limited to a determination of whether the decision of the Commissioner is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006).  "There is a notable difference between 'substantial evidence' and 'substantial evidence on the record as a whole.'"  *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotations omitted); *see also Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."). "'Substantial evidence on the record as a whole,' . . . requires a more scrutinizing analysis."  *Gavin*, 811 F.2d at 1199.  "The substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings."  *Id*.  In reviewing the

administrative decision, "'[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Id.* (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

In reviewing the record for substantial evidence, the Court may not substitute its own opinion for that of the ALJ. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). The Court may not reverse the Commissioner's decision merely because evidence may exist to support the opposite conclusion. *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994); *see also Woolf*, 3 F.3d at 1213 (concluding that the ALJ's determination must be affirmed, even if substantial evidence would support the opposite finding). Instead, the Court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." *Gavin*, 811 F.2d at 1199. The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

The claimant bears the burden of proving his or her entitlement to disability insurance benefits and supplemental security income under the Social Security Act. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991). Once the claimant has demonstrated that he or she cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first

that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

## II.     Analysis of the ALJ's Decision

Plaintiff does not dispute the ALJ's findings on the first three steps of the sequential evaluation. (Doc. No. 16, Pl.'s Memo. 7.) [5]  However, Plaintiff does dispute steps four and five.

### A.     Incorporating Plaintiff's Limitations in RFC

Plaintiff asserts that the medical expert testified at the hearing that "the limitations contained in the residual functional capacity assessment . . . were consistent with the medical evidence or record[,]" and that Plaintiff's "impairments would require 'a minute or two' be allowed for Plaintiff to go from a standing position to a seated position, or from a seated position to a standing position." (Pl.'s Mem. 9.)  Plaintiff contends that the ALJ therefore erred in its analysis of his RFC by not addressing these limitations (*i.e.*, Plaintiff's inability to maintain a sitting or standing position for more than ten minutes and the need for a one-to-two minute break when changing positions).

---

[5]     It is undisputed that Plaintiff suffers several severe impairments.  And Plaintiff concedes that "he has not produced sufficient evidence showing that his impairments meet or equal the requirements of any medical conditions described in the Listings of Impairments." (*Id.* at 7-8.)

This Court, however, finds that the ALJ *did* appropriately address the limitations imposed by Plaintiff's impairments. After conducting the April 2004 FCE, the evaluator recommended that Plaintiff perform light-level work, with certain restrictions, and that he could do so for eight hours a day, five days per week. (Tr. 316.) The evaluator stated that Plaintiff would have to alternate sitting, standing, and walking throughout the day, and that Plaintiff could sit for six to thirty-three percent of an eight-hour day, and stand for six to thirty-three percent of an eight-hour day. (Tr. 316; 318.) In addition, the evaluator stated that Plaintiff was unable to sustain static sitting or standing for more than ten minutes due to back pain and that Plaintiff should limit sitting or standing to ten minutes before changing activity or position. (Tr. 318.)

At the hearing, the medical expert testified that the FCE findings were supported by the record. (Tr. 677.) Regarding changing positions, the medical expert opined that a brief change of position, meaning a minute or two of changing position between sitting and standing "would not be unreasonable." (Tr. 678.) However, the medical expert also agreed with changing the positions "at will." (Tr. 678.)

In its November 17, 2006 Decision, after determining that Plaintiff suffered from several severe impairments, the ALJ stated the following as to Plaintiff's RFC:

> After carefully considering all the evidence of record, including the
> testimony presented at the hearing, the undersigned concludes the

> claimant retains the residual functional capacity, since March 13, 2002, to perform a light level of work, as defined in 20 C.F.R. 404.1567 and 416.967, which provides for a change of position *at will*, no overhead work, no more than occasional bending, twisting, stooping, kneeling, crouching, crawling, or climbing, and work which is routine, repetitive, and unskilled, not requiring more than brief and superficial contact with others.

(Tr. 20 (emphasis added).)  Therefore, taking into account both the evaluator and the medical expert's statements about Plaintiff's limitations, the ALJ addressed Plaintiff's need for alternating sitting, standing, and walking throughout the day, with the additional limitation of sitting or standing for no more than ten minutes at a time, with a minute or two allowed in between for changing position, when she stated that Plaintiff's RFC included the need for "a change of position at will." (*Id.*)  "At will" means "[s]ubject to one's discretion; as one wishes or chooses[.]" Black's Law Dictionary 125 (7th ed. 1999).  Therefore, although the ALJ did not state that Plaintiff could not stand or sit for longer than ten minutes, and did not state that Plaintiff needed one to two minutes for changing position, the ALJ stated that Plaintiff needed to be able to change positions "at will," which encompasses Plaintiff's limitations.

### A.     Vocational Expert's Hypothetical

After formulating Plaintiff's RFC and determining that Plaintiff could no longer perform his past relevant work, the ALJ proceeded to step five of the Social Security disability evaluation process, which required her to determine whether Plaintiff could perform any other type of work given his RFC.  Relying on

the vocational expert's testimony, and particularly the vocational expert's answers to the ALJ's hypothetical questions, the ALJ concluded that Plaintiff was not disabled because he could "make a vocational adjustment to work which exists in significant numbers in the national economy[,]" such as "bench assembly, cashier II, and a hand packing."  (Tr. 25.)

Plaintiff contends that "[b]ecause the ALJ improperly determined [Plaintiff's] residual functional capacity, the [vocational expert's] responses to the ALJ's hypothetical questions do not constitute substantial evidence on which to base a denial of [Plaintiff's] claim for benefits."  (Pl.'s Mem. 10.)  Plaintiff asserts that the ALJ should have included specific limitations in the hypothetical question posed to the vocational expert.

"Unless the hypothetical question comprehensively describes the limitations on a claimant's ability to function, a vocational expert will be unable to accurately assess whether jobs do exist for the claimant."  *Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994).  "Testimony from a VE based on a properly-phrased hypothetical question constitutes substantial evidence."  *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996).

Here, the ALJ posed a hypothetical question to the vocational expert whereby the ALJ described someone of Plaintiff's age, with the same education, past relevant work experience, and impairments.  The ALJ asked the vocational expert to "assume that this individual is limited to light work exertionally lifting up

13

to 20 pounds occasionally, 10 pounds frequently, there should be no overhead work, there should be no more than occasional bending, twisting, stooping, kneeling, crouching, crawling, or climbing[.]"  (Tr. 682.)  In addition, "the work should also accommodate the need for a brief change of position at will throughout the workday for a brief period of time."  (Tr. 683.)[6]  Further, the hypothetical person was to be reduced to "routine, repetitive, unskilled work [] that should not involve more than brief and superficial contact with others."  (Tr. 683.)  The ALJ asked whether there would be "other jobs in the national economy that would fall within these limitations[.]"  (Tr. 683.)  The vocational expert answered, "Yes.  I believe so[,]" and specifically mentioned jobs such as bench assembler, cashier II, and hand packager.  (Tr. 683-85.)

     This Court concludes that by stating that "the work should . . . accommodate the need for a brief change of position at will throughout the workday," and by indicating the job would need to be in the "light" category, the ALJ did include and "comprehensively describe" the claimant's limitations in the hypothetical.  By using the phrase "a brief change of position," the ALJ accounted for a one-to-two minute time period for changing positions.  And by using the phrase "at will," the ALJ accounted for the changing of positions in 10-minute intervals.  Further, by stating that the job would need to be in the "light" category,

---

[6]  The ALJ indicated that the hypothetical should take into account the person's need to vary between sitting and standing when she pointed out the job would need to be in the "light" category.  (Tr. 683.)

the ALJ accounted for the need to vary between sitting and standing.[7]  Therefore, the hypothetical question was proper and the vocational expert's conclusion based on that hypothetical was proper as well.  *See Roe*, 92 F.3d at 676 ("While the hypothetical question must set forth all the claimant's impairments . . . it need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments.") (citation omitted).

Further, having reviewed the record, including the opinions and assessments of the various physicians and experts, the Court finds that there is substantial evidence in the record to support the Commissioner's decision regarding Plaintiff's RFC and his ability to perform other jobs in the national economy.  *See Cruze v. Chater*, 85 F.3d 1320, 1326 (8th Cir. 1996) (finding vocational expert's testimony which was based on a properly phrased hypothetical question sufficient to support ALJ's decision).

## RECOMMENDATION

For the reasons stated, this Court recommends that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 15) be **DENIED**;

2. Defendant's Motion for Summary Judgment (Doc. No. 23) be **GRANTED**;

---

[7] As referenced above, the ALJ stated in its November 17, 2006 Decision that Plaintiff retains the RFC "to perform a light level of work, as defined in 20 C.F.R. 404.1567 and 416.967[.]"  (Tr. 20.)   20 C.F.R. 404.1567(b) and 416.967(b) define "light work" and reference the differing positions of walking, standing, and sitting.

    3.      The decision of the Commissioner of Social Security be **AFFIRMED**;

and

    4.      This case be **DISMISSED WITH PREJUDICE**.


Date: July 30, 2008

                                            s/Jeffrey J. Keyes
                                            JEFFREY J. KEYES
                                            United States Magistrate Judge


Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before August 13, 2008.